**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION AND TRIZETTO PROVIDER SOLUTIONS, LLC, DATA SECURITY BREACH LITIGATION | MDL No. 3185<br><br>Case No. 4:26-md-3185-JAR<br><br>ALL CASES |

# TPS/COGNIZANT DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO DISCLOSE PATIENT NUMBERS RELATED TO IMPACTED ENTITIES AND MOTION FOR EXTENSION OF TIME

Defendants TriZetto Provider Solutions, LLC ("**TPS**") and Cognizant Technology Solutions Corporation ("**Cognizant**") (together, "**Defendants**") file this response to Plaintiffs' Motion to Disclose Patient Numbers Related to Impacted Entities and Motion for Extension of Time, ECF 54 (the "**Motion**"). The Court should deny the Motion.

## I. INTRODUCTION

Defendants cooperated to expeditiously resolve the parties' disputes about the scope of discovery, and timely served discovery responses as ordered by this Court. Plaintiffs' improper, untimely Motion now seeks to reopen pre-consolidated complaint discovery and compel production of information this Court already explicitly held Defendants need not produce.

The Motion should be denied. Reopening discovery requires a showing of diligence, which Plaintiffs do not and cannot provide. Indeed, the Motion offers no explanation whatever for Plaintiffs' failure to file their motion within the pre-consolidated complaint discovery period—a

failure that was transparently strategic, serving to manufacture an apparent emergency that ultimately resulted in the abridgement of Defendants' time to respond.

Further, Plaintiffs have not and cannot show good cause for this Court to alter its prior Order setting the scope of pre-consolidated complaint discovery. Indeed, Plaintiffs have no use at this stage for the vast bulk of the information they seek—and production of various aspects of the information is not within the possession, custody or control of Defendants, would be highly burdensome to Defendants to obtain it (if they could at all), and would be prejudicial to absent third parties.

For these reasons, as further shown below, the Motion should be denied. But if the Court does order additional discovery, it should be significantly more limited than requested in the Motion. Specifically, the Court should limit Plaintiffs' request to the affected population counts for entities (1) against whom Plaintiffs certify they are in a position to bring suit, and (2) for whom Defendants are in possession of the information requested.

## II. BACKGROUND

Following creation of this MDL, the Court set an initial status conference for June 26, 2026, and directed the parties to file preliminary status reports addressing proposed leadership structures, threshold issues, and a proposed schedule for the consolidated complaint. ECF 6. Plaintiffs' portion of the parties' joint report mentioned their desire for the Court to permit, prior to the deadline for the filing of a consolidated complaint, "a short period of discovery to identify all appropriate defendants." ECF 14 at 9. However, no motion was filed, and the parties did not brief the issue or identify relevant legal authority.

At the June 26 status conference, the Court agreed with Plaintiffs' representation that such pre-consolidated complaint discovery would "serve[] the interests of judicial economy," and so

ordered a 45-day period for limited discovery to identify additional parties, to commence after appointment of interim co-lead counsel, with a status report due seven (7) days after appointment of counsel. ECF 22 at 1. That appointment took place on July 6, 2026, such that the status report was due July 13, and the pre-consolidated complaint discovery period would end on August 20. ECF 31 at 7.

Plaintiffs served their pre-consolidated complaint discovery requests on July 9, 2026, seeking, among other things, a list of all affected entities and the number of affected patients per entity by state. ECF 33 at 1. Rather than wait the standard thirty (30) days to serve objections and responses, Defendants instead agreed to raise their objection to the broad scope of this discovery in the July 13 status report so the Court could resolve the scope of discovery issues on an expedited basis. *Id.* at 2, 6-7. In their portion of the status report, Plaintiffs represented that they "do not seek this discovery to recruit additional plaintiffs." ECF 33 at 3. Rather, they said, *id.*, they needed the discovery sought because:

> Plaintiffs' counsel has continued to vet additional, potential named plaintiffs since the inception of this case. While multiple purported class members have come forward, interested in acting as a lead plaintiff in this case, standing for some has yet to be fully vetted as Defendant has not identified all entities impacted in the Data Breach.

Two days later, on July 15, 2026, the Court issued its Order on the scope of pre-consolidated complaint discovery. ECF 34 (the "**July 15 Order**"). The Court agreed with Plaintiffs that the identities of all affected entities were discoverable. *Id.* at 2. But the Court accepted Defendants' position in important respects, ruling that Defendants "need not disclose the exact number of patients impacted through each healthcare provider in each state." *Id.* Instead, the Court ordered Defendants to produce "[a] list of states where impacted patients reside and/or received care." *Id.*

On August 6, 2026, the Court entered an agreed Protective Order, limiting the disclosure of information designated "Confidential" or "Highly Confidential." ECF 46. On August 10, Defendants timely served their discovery responses and produced the ordered information, producing a "HIGHLY CONFIDENTIAL" spreadsheet identifying approximately 33,564 affected entities. Fagelman Decl. ¶ 3. The same day, the Court confirmed that discovery would close on August 20, 2026, as scheduled, and set September 21, 2026, as the deadline for Plaintiffs to file their amended consolidated complaint. ECF 48 at 2.

On August 12, 2026, two days after receiving Defendants' discovery responses, Plaintiffs' counsel asked Defendants' counsel a clarifying question, which Defendants' counsel answered the next day. Fagelman Decl. ¶ 4 & Ex. A at 4-6 (Aug. 12 & 13 emails). Defendants' counsel did not hear from Plaintiffs' counsel again until August 20, 2026, the day pre-consolidated complaint discovery closed, at which time Plaintiffs' counsel sent an email to Defendants' counsel (while he was out of the country) asking for affected population counts, but without any explanation for the basis of the request. *Id.* ¶ 5 & Ex. A at 2 (Aug. 20, 2026 email). The next week, Plaintiffs reiterated their email request, again without providing any basis. Defendants' counsel declined to provide patient counts, noting that nothing had changed since the Court's July 15 Order and Defendants would oppose any effort by Plaintiffs to re-litigate an issue the Court has already decided. *Id.* ¶ 6 & Ex. A at 1 (Aug. 26 & 27 emails).

Defendants' counsel did not hear from Plaintiffs' counsel again on this issue until Plaintiffs filed their Motion on September 10—two business (2) days before the next status conference, and seven (7) business days before the consolidated complaint deadline. *Id.* ¶ 7. On September 11, 2026, the parties submitted a status report in which Defendants noted their intent to oppose the Motion. On September 14, after a status conference including discussion of the Motion, the Court

set an expedited deadline for Defendants' response, requiring it to be filed by September 18 at 5:00 p.m., and stayed Plaintiffs' deadline to file a consolidated complaint pending a ruling on the Motion. ECF 57.

## III. LEGAL STANDARD

Plaintiffs err in asserting that their motion may be granted so long as the discovery sought is "relevant" and not "unduly burdensome." Mot.4-5. To the contrary, a court should not exercise its discretion to reopen discovery absent, "at minimum," a showing of "good cause." *LADS Network Sols. Inc. v. Agilis Sys. LLC*, No. 4:19-CV-00011-SEP, 2026 WL 881398, at *2 (E.D. Mo. Mar. 31, 2026). "The 'good cause' standard is an exacting one." *N. Star Mut. Ins. Co. v. Zurich Ins. Co.*, 269 F. Supp. 2d 1140, 1144 (D. Minn. 2003). "The primary measure of good cause is the movant's diligence." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). Discoverable information may be relevant, or even "helpful," and yet "not qualify as 'good cause'." *Land O' Lakes, Inc. v. Employers Mut. Liab. Ins. Co. of Wisconsin*, 846 F. Supp. 2d 1007, 1017 (D. Minn. 2012). Courts deny motions to reopen discovery which fail to "meaningfully address the applicable good-cause standard," and instead purport to rely on "the relevance standard under Rule 26(b)(1) establish[ing] the scope of recoverable information." *Learing v. Anthem Companies, Inc.*, 2025 WL 892847, at *7 (D. Minn. Mar. 24, 2025).

## IV. ARGUMENT

### A. The Motion Should Be Denied for Lack of Diligence

Plaintiffs fail to offer any explanation for their lack of diligence in seeking additional discovery after receiving Defendants' August 10 discovery responses and/or attempting to independently obtain various of the requested information from publicly-available sources (e.g.,

the HHS Office for Civil Rights (OCR) Breach Portal). Plaintiffs have no explanation because Plaintiffs' delay is transparently strategic. The Motion should be denied on this basis alone.

Diligence is obligatory in a motion to reopen discovery, and courts routinely deny such motions when they fail to show it. *See, e.g.*, *N. Star Mut. Ins.*, 269 F. Supp. 2d at 1144; *LADS Network Sols.*, 2026 WL 881398, at *2; *Learing*, 2025 WL 892847, at *7; *Factory Mut. Ins. Co. v. Henning Companies, LLC*, 2025 WL 2083829, at *2 (D. Neb. July 24, 2025). The diligence requirement serves to ensure adherence to scheduling orders, which are "designed to streamline the flow of litigation through our crowded dockets." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). This reason applies with even greater force here, where the highly unusual discovery Plaintiffs seek to reopen was ordered in the first place only because Plaintiffs represented that it would promote judicial economy.

Plaintiffs have not and cannot show diligence here. Diligence means filing a motion to reopen discovery as soon as the movant realizes that additional time is required—***not a month later as here***. *See Zarling v. Abbott Labs.*, 2022 WL 1598232, at *6 (D. Minn. May 20, 2022) (motion filed three weeks after deadline lacked diligence, given movant knew of need for motion two weeks before deadline). When the motion comes after the deadline, diligence requires some "changed circumstance after the . . . deadline" that warrants the reopening. *LADS Network Sols.*, 2026 WL 881398, at *2 (emphasis added). Here, Plaintiffs can show no such changed circumstances. Defendants timely served their discovery responses on August 10, 2026, and from that point on Plaintiffs had all the information needed to ascertain whether they desired additional discovery. Instead of promptly seeking additional discovery, Plaintiffs waited ten days—until the

very last day of the discovery period—to reach out informally to Defendants by email.[1] Plaintiffs then waited another three weeks to file their Motion, doing so just two (2) business days before the scheduled status conference, and eleven (11) days before the consolidated complaint deadline.

Plaintiffs' last-minute filing is a transparent attempt to manufacture a favorable emergency that will allow them to further expand the scope of preliminary discovery beyond what this Court's Orders warrant. Indeed, while the Court properly declined to rule on the Motion on the status conference itself, Plaintiffs' gamesmanship has already advantaged them procedurally by forcing a discussion of their request before Defendants had an opportunity to prepare a written response. Plaintiffs' strategic lack of diligence shows that the Motion lacks good cause, and should be denied.

**B. <u>The Motion Should Be Denied Because the Discovery Sought Is Unnecessary.</u>**

Plaintiffs also fail to show that the discovery sought is necessary. Even setting aside its procedural deficiency and lack of diligence, the Motion should be denied because Plaintiffs fail to show good cause for reopening pre-consolidated complaint discovery in the manner requested. The Court's July 15 Order already considered and rejected Plaintiffs' request for per-entity patient counts, ruling that "[a] list of states where impacted patients reside and/or received care will suffice at this stage." ECF 34 at 2. The only purportedly changed circumstance Plaintiffs identify is that they are surprised by the number of affected entities. Given that TPS provides services to approximately 875,000 providers, it is unclear why Plaintiffs find it so surprising that there are

[1] Plaintiffs' Motion incorrectly states that they asked for affected population counts "[b]eginning August 12." Mot.4. In fact, Plaintiffs' August 12 request was for information about the distinction between two categories of affected entities, which Defendants promptly provided. Plaintiffs did not ask for affected population counts until August 20.

approximately 33,564 affected entities.[2] But even if the affected entity count does constitute new information, Plaintiffs fail to show that it can support the discovery they seek.

Plaintiffs' Motion errs in suggesting that the discovery is necessary because without it, they will be forced to "nam[e] all 33,564 entities as Defendants." Mot.2. Plaintiffs do not need to do this, and in any event, they very likely cannot, because Plaintiffs can only name as defendants entities against whom a named plaintiff has a viable claim. In the July 13 Joint Report, Plaintiffs expressly represented that they "do not seek this discovery to recruit additional plaintiffs." ECF 33 at 3. Rather, they stated, they already had "multiple purported class members" who had "come forward, interested in acting as a lead plaintiff," and needed discovery to "vet" those potential plaintiffs' standing. *Id.* Plaintiffs are already in a position to match potential new plaintiffs to potential new defendants, and likely have already done so, resulting in a shortlist of potential new defendants with far fewer than 33,564 entities on it. The discovery sought is not necessary for Plaintiffs to assess this shortlist. Further, even if Plaintiffs did require affected population counts in order to triage between the handful of entities they could potentially sue, requiring Defendants to provide affected population counts for all affected entities would have the practical effect of compelling production of a haystack to allow Plaintiffs to search it for a few needles.

As further explained *infra*, production of the proverbial haystack of affected population counts would be burdensome to Defendants, prejudicial to absent third parties, and in many instances, duplicative of information already publicly available. Accordingly, good cause does not exist to reopen discovery, and the Motion should be denied.

---

[2] *See* <https://www.trizettoprovider.com/>. Further, Plaintiffs allege an affected population of 3.4 million individuals, and are also aware that affected healthcare provider entities often have only a few hundred associated individuals. Taken together, these facts should have suggested a higher number of affected entities than Plaintiffs suggest they expected.

### C. In the Alternative, the Court Should Limit The Discovery Requested.

Should the Court nonetheless determine that some additional discovery is warranted, it should be narrower than Plaintiffs request. Two distinct limitations are independently warranted.

#### 1. Discovery should be limited to entities Plaintiffs could potentially name as defendants.

Rather than ordering Defendants to produce per-entity population counts for thousands of entities whom Defendants have no intention of suing, the Court should require Plaintiffs to identify the specific entities they are actually considering naming as defendants—*i.e.*, entities connected to a particular potential named plaintiff—and limit any further production to that subset. This approach would serve the stated purpose of helping Plaintiffs triage potential defendants while avoiding the significant burdens associated with a blanket disclosure order. For example, TPS may have contractual obligations to notify various of the affected entities prior to disclosing their sensitive business information. Donohue Decl. ¶¶ 8-9. To the extent some of these entities may be entitled to notice before Defendants disclose their information, the cost of providing that notice and potentially litigating objections from those affected entities would impose enormous costs entirely disproportionate to the limited purpose this discovery was meant to serve.

Defendants would further ask that any such narrowed production be conditioned on Plaintiffs' certification that the identified entities correspond to potential named plaintiffs with plausible connections to those entities, so that this process is not used as a vehicle to obtain confidential information about entities Plaintiffs have no intention of suing.

#### 2. Discovery should be limited to those affected entities that opted in to TPS providing notice on the entity's behalf.

Independently, the Court should limit any required production to information within Defendants' possession, custody, and control as only some of the requested information is. TPS

offered affected entities the option to have TPS provide individual and/or regulatory notice on the entity's behalf. Donohue Decl. ¶ 3. TPS presently has reasonably accurate per-entity affected-population counts only for those entities that opted into individual and regulatory notice, which is less than a quarter of all affected entities. *Id.* ¶ 4. For a small number of affected entities who opted into individual notice but not regulatory notice, TPS does not presently have per-entity affected-population counts, but could likely ascertain that information with additional investigation. *Id.* ¶ 5. However, for the affected entities who did not request TPS to provide on their behalf individual and/or regulatory notice—which is more than three-quarters of the affected entities—TPS is unable to accurately ascertain the entity's affected-population count. *Id.* ¶ 6. Further, for affected entities that opted to provide regulatory notice on their own behalf, their affected-population counts may already be disclosed on the HHS OCR Breach Portal, such that additional discovery as to those entities would be duplicative of publicly available information. *Id.* ¶ 7.

For these reasons, in the event the Court is inclined to require Defendants to provide patient counts, it would respectfully request that the Court limit it to only those affected entities that opted in to have TPS provide individual and/or regulatory notice, and provide TPS sufficient time to provide any requisite notice to the affected entities and ascertain accurate patient counts for them.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion. To the extent the Court determines that further discovery is appropriate, Defendants request that it be limited to the specific entities Plaintiffs are considering naming as defendants, and, in any event, to only those affected entities that opted in to TPS providing individual and/or regulatory notice on the entity's behalf.

Respectfully,

*/s/ Jason K. Fagelman*

Jason K. Fagelman
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
T: (214) 855-8000
E: jason.fagelman@nortonrosefulbright.com

*Attorneys for Defendants TriZetto Provider Solutions, LLC and Cognizant Technology Solutions Corporation and Defendants' Liaison Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2026, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's CM/ECF system, which will automatically notify all counsel of record.

*/s/ Jason K. Fagelman*
Jason K. Fagelman